IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. MOSS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

NICHOLAS M. MOSS, APPELLANT.

Filed July 28, 2020.    No. A-19-1155.

Appeal from the District Court for Sarpy County: GEORGE A. THOMPSON, Judge. Affirmed.

Nicholas M. Moss, pro se.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

PIRTLE, RIEDMANN, and WELCH, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Nicholas M. Moss appeals the order of the district court for Sarpy County that denied his verified motion for postconviction relief without holding an evidentiary hearing. We conclude that Moss failed to adequately allege how his trial counsel's ostensibly deficient performance prejudiced him, and we therefore affirm the district court's decision.

## BACKGROUND

As a result of events that occurred on May 14 and 15, 2015, involving Moss' former girlfriend, K.E., Moss was charged with first degree sexual assault, first degree false imprisonment, and violation of a domestic violence protection order. Trial was held in January 2017. Throughout trial, Moss was wearing an electronic restraint device on his leg, which he refers to as a "stun belt" and the district court called the "bandit." The record contains little information surrounding the

device. During the testimony of a law enforcement officer at trial, however, the record indicates the following:

> (Defendant yelled.)
> DEPUTY: You all right?
> THE COURT: Can you continue with your answer, sir? Do we need to take a short break?
> [MOSS]: Can we please? Sorry, my back.

The court then excused the jury and took a break. The court came back on the record and explained that there had been a noise and Moss yelled, "realizing that the bandit had went off." The sheriff's deputy indicated that he did not activate the bandit. The device apparently delivered some type of shock to Moss during trial. At the time, trial counsel did not move for a mistrial or request a jury instruction or admonishment.

Moss testified in his own defense at trial. Contrary to K.E.'s testimony, he claimed that she willingly went with him on May 14 and 15, 2015, and that they engaged in consensual sex during that time. During Moss' testimony, trial counsel offered into evidence cell phone records that would purportedly establish that K.E. had lengthy phone conversations with Moss after the May 14 and 15 events, despite the fact that K.E. denied doing so during her testimony at trial. However, the court sustained the State's foundational and hearsay objections because Moss did not have a witness from the cell phone carrier present to lay proper foundation for the exhibit.

The jury found Moss guilty of all three charges. He was sentenced to a total of 26 to 31 years' imprisonment.

Moss appealed to this court. We affirmed his convictions and sentences on direct appeal but found that the record was insufficient to address several of his ineffective assistance of counsel claims. See *State v. Moss*, No. A-17-733, 2018 WL 2768941 (Neb. App. June 5, 2018) (selected for posting to court website). The Nebraska Supreme Court denied Moss' petition for further review in August 2018.

On August 22, 2019, Moss filed a pro se verified motion for postconviction relief. He claimed that his trial counsel was ineffective in numerous respects. Relevant to this appeal, he alleged that trial counsel was ineffective in failing to object to him wearing the electronic restraint device during trial, failing to request a jury instruction or admonishment or move for a mistrial when the device activated at trial, and failing to gain admittance of the cell phone records into evidence at trial.

In a written order, the district court concluded that Moss failed to meet his burden of articulating facts, beyond mere conclusions, that show he is entitled to relief and how he was actually prejudiced or how the outcome would have been different but for counsel's performance. The court therefore denied the motion for postconviction relief without an evidentiary hearing. Moss appeals.

## ASSIGNMENTS OF ERROR

Moss assigns that the district court erred in failing to grant him an evidentiary hearing.

STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Stricklin*, 300 Neb. 794, 916 N.W.2d 413 (2018).

ANALYSIS

Moss claims that the district court erred by denying his motion for postconviction relief without an evidentiary hearing. Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable. *Id.* In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *State v. Stricklin, supra.*

A trial court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution. *State v. Stricklin, supra.* If a postconviction motion alleges only conclusions of fact or law, or if the records and files in a case affirmatively show the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing. *Id*. Thus, in a postconviction proceeding, an evidentiary hearing is not required (1) when the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights; (2) when the motion alleges only conclusions of fact or law; or (3) when the records and files affirmatively show that the defendant is entitled to no relief. *Id*.

Moss' motion for postconviction relief alleges that his trial counsel was ineffective with respect to two issues. The Sixth Amendment to the U.S. Constitution provides that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his defense. *State v. Dubray*, 294 Neb. 937, 885 N.W.2d 540 (2016). The right to counsel has been interpreted to include the right to *effective* counsel. *Id*. Under the standard established by the U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), claims of ineffective assistance of counsel by criminal defendants are evaluated using a two-prong analysis: first, whether counsel's performance was deficient and, second, whether the deficient performance was of such a serious nature so as to deprive the defendant of a fair trial. *State v. Dubray, supra*. A court may address the two elements of this test, deficient performance and prejudice, in either order. *Id*.

To show that the performance of a prisoner's counsel was deficient, it must be shown that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *Id*. To establish the prejudice element of the *Strickland v. Washington* test, a defendant must show that the counsel's deficient performance was of such gravity to render the result of the trial unreliable or the proceeding fundamentally unfair. *State v. Dubray, supra*. This prejudice is shown by establishing that *but for* the deficient performance of counsel, there is a reasonable probability that the outcome of the case would have been different. *Id*.

Moss raises several issues related to the electronic device he was required to wear at trial, arguing that the district court should have granted an evidentiary hearing for his claims. In general, he first argues that

[w]here the Court of Appeals specifically held that the record was insufficient to address those claims regarding the use of the "stun belt," [Moss] articulated facts regarding deficient performance of trial counsel that the district court, as a matter of statute and substantive due process, is legally bound to further develop the record of through the appearance of an evidentiary hearing.

Brief for appellant at 14. We disagree.

The Supreme Court recently emphasized two important points about a conclusion that the record on direct appeal is insufficient to resolve certain claims. See *State v. Stelly*, 304 Neb. 33, 932 N.W.2d 857 (2019). First, when an appellate court finds, on direct appeal, that the record is not sufficient to resolve a claim of ineffective assistance, it should not be misunderstood as a finding that the claim will necessarily require an evidentiary hearing if raised in a motion for postconviction relief, because that determination is governed by an entirely different standard. *Id*.

Second, just because an appellate court finds the record on direct appeal is insufficient to resolve a claim of ineffective assistance, it does not mean that a postconviction court will necessarily be precluded from later finding the existing record affirmatively refutes the same claim. *Id*. Several factors make this so. Sometimes, critical portions of the existing trial record are not included in the appellate record, but are later available to the postconviction court. *Id*. Additionally, because a defendant on direct appeal is not required to make specific allegations of prejudice, the appellate court often has an incomplete understanding of how a defendant claims to have been prejudiced by certain deficient conduct. *Id*. Consequently, a finding on direct appeal that the existing record is insufficient to determine a claim of deficient conduct does not speak to whether the existing record will be sufficient to affirmatively refute prejudice once the claim is alleged on postconviction. *Id*. Accordingly, in the present case, although we determined on direct appeal that the record was insufficient to address claims related to the electronic device and its activation at trial, the district court was not required to grant Moss an evidentiary hearing with respect to these claims.

Furthermore, Moss argues that he articulated sufficient facts regarding deficient performance such that the court should have granted an evidentiary hearing. Even if his allegations surrounding trial counsel's performance were sufficient, we conclude that the motion fails to adequately allege how Moss was prejudiced by counsel's actions. Prejudice is shown by establishing that *but for* the deficient performance of counsel, there is a reasonable probability that the outcome of the case would have been different. *State v. Dubray*, 294 Neb. 937, 885 N.W.2d 540 (2016).

Moss claims that his trial counsel was ineffective in failing to object to the requirement that he wear the electronic device and in failing to request a curative jury instruction or admonishment or move for a mistrial when he was shocked by the device at trial. Regarding trial counsel's failure to object, Moss' motion alleges that he was prejudiced because his "status of incarceration" was revealed to the jury when the device discharged and "by the psychological

damage that the wearing of the [device] causes and the resultant negative effect on his ability to aid in his own defense." He further alleges that the outcome of trial would have been different had his status of incarceration not been disclosed.

Moss does not expand on these conclusions to explain how the outcome would have differed. For example, assuming the activation of the device at trial did, in fact, alert the jury that Moss was outfitted with a device and led to the revelation that he was "in custody" as Moss alleges, he does not assert how this discovery impacted the outcome of trial. Moreover, he does not explain how the electronic device caused him "psychological damage" or impaired his demeanor, testimony, or ability to aid in his own defense, nor does he allege how these issues rendered the result of the trial unreliable or the proceeding fundamentally unfair. In other words, his motion does not allege any facts that would establish that *but for* the deficient performance of counsel, there is a reasonable probability that the outcome of the case would have been different. See *State v. Dubray, supra*.

Likewise, with respect to trial counsel's failure to request a jury instruction or admonishment or move for a mistrial after the electronic device activated during trial, Moss' motion alleges that trial counsel's failures prejudiced his right to a fair trial "by destroying his right to be free from self-incrimination," showed the jury that he was in custody, and gave the jury the impression that he was somehow dangerous. These claims, again, are mere conclusions and insufficient to warrant an evidentiary hearing. Moss does not allege how the activation of the device would inform the jury that he was wearing the device or even that the jury became aware that he was wearing the device. Furthermore, even if the jury did become aware that Moss was wearing the device, Moss' motion fails to allege how the jury's awareness that he was "in custody" rendered the result of the trial unreliable or the proceeding fundamentally unfair.

We note that the fact that a jury observes a defendant in some sort of restraint does not automatically prejudice a defendant or deprive him of a fair trial. In *State v. Mata*, 266 Neb. 668, 668 N.W.2d 448 (2003), *abrogated on other grounds*, *State v. Rogers*, 277 Neb. 37, 760 N.W.2d 35 (2009), it was undisputed that jurors observed the defendant in leg restraints as he walked 15 to 20 feet through the courtroom. On appeal, the defendant argued that since restraints were not shown to be necessary to prevent his escape, or other breaches of security, the prejudice resulting from the use of visible restraints violated his right to a fair trial. The Supreme Court disagreed and held that the defendant was not prejudiced by the restraints in a way that deprived him of a fair trial, reasoning in part that the restraints could serve only to call the jury's attention to what it already knew--that the defendant was charged with a serious crime.

Although the defendant in *State v. Mata, supra*, was charged with first degree murder and the facts were gruesome, Moss was also facing serious charges of first degree sexual assault and first degree false imprisonment. The jury was obviously aware of the charges Moss faced and heard the testimony of the witnesses, including K.E.'s description of the events which led to the charges. Thus, although Moss' "status of incarceration" may have been reinforced by activation of the electronic device, Moss' motion does not allege how he was prejudiced or how the result of the trial was unreliable or the proceeding fundamentally unfair. We therefore conclude that the district court did not err when it refused an evidentiary hearing on the claims regarding the "stun belt" because Moss failed to adequately allege prejudice.

Moss also asserts that he was entitled to an evidentiary hearing on his claim that his trial counsel was ineffective in failing to successfully gain admittance of cell phone records into evidence at trial. Moss argues that the cell phone records which trial counsel offered would show more than 4 hours of conversation between him and K.E. in the 2 months following the May 14 and 15, 2015, incident. Moss argues that these records would therefore contradict K.E.'s testimony that she did not talk to him on the phone after the incident occurred, impairing her credibility with the jury.

The cell phone records Moss' trial counsel offered into evidence at trial do not indicate the owner of the cell phone but consist of 20 pages depicting cell phone calls made and received between April 25 and May 15, 2015. Thus, the records, on their face, do not support Moss' allegation that between May 16 and July 27, he and K.E. talked on the phone for more than 4½ hours total. Nor would the cell phone records contradict K.E.'s testimony that she did not have phone conversations with Moss after the incident, which ended on May 15, because the records contain no information beyond May 15.

Moreover, when trial counsel was attempting to lay foundation for these records at trial, he asked Moss to confirm K.E.'s phone number, and Moss replied that "it was 775-857 something" but that he did not recall the rest of the number. The cell phone records trial counsel offered into evidence do not list any calls to or from a phone number that begins with 775-857. Thus, these records would not assist in establishing that Moss and K.E. spoke on the phone before, during, or after the relevant events.

If there is a second set of cell phone records depicting calls made at later dates as Moss suggests in his brief, they were not offered into evidence at trial. Moss' claim in his postconviction motion does not allege that trial counsel was ineffective in failing to offer this set of records into evidence; rather, he alleges only that trial counsel failed to successfully gain admittance of cell phone records that were offered into evidence because he failed to lay proper foundation. And only one exhibit containing cell phone records was offered at trial. Accordingly, Moss has failed to establish that he was prejudiced by counsel's failure to gain admittance of the cell phone records into evidence at trial. Therefore, the district court did not err when it denied postconviction relief on this claim without an evidentiary hearing.

We observe that in the context of his argument regarding the cell phone records, Moss also attempts to raise issues related to law enforcement's unsuccessful attempts to gain access to his cell phone without the PIN code, which he claims ultimately destroyed his phone and resulted in the loss of exculpatory evidence. However, these issues were addressed and resolved in his direct appeal; and thus, he is procedurally barred from raising them in his postconviction motion. See *State v. DeJong*, 292 Neb. 305, 872 N.W.2d 275 (2015) (because same issue was raised and addressed on direct appeal, claim is procedurally barred for postconviction purposes).

CONCLUSION

We conclude that Moss' motion for postconviction relief fails to adequately allege how he was prejudiced by trial counsel's performance. Accordingly, the district court did not err in denying the motion without an evidentiary hearing. The court's order is therefore affirmed.

AFFIRMED.